**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* ORLY GENGER,<br><br>      Debtor. | Chapter 7<br><br>Case No. 19-13895 (JLG) |
| MICHAEL OLDNER, as Trustee of THE ORLY GENGER 1993 TRUST,<br><br>                    Plaintiff,<br><br>      v.<br><br>ORLY GENGER,<br><br>                    Defendant. | Adv. Pro. No. 19-01447 (JLG) |

**Memorandum of Law by**
**Orly Genger 1993 Trust, by its Trustee Michael Oldner,**
**in Opposition to Motion to Dismiss**

POLLOCK COHEN LLP
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
*Attorneys for the Orly Genger 1993 Trust,*
*by its Trustee Michael Oldner*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..........................................................................................1

RELEVANT FACTS ......................................................................................................2

    I.     The Genger Divorce and Related Litigation.................................................2

    II.    New York State Court Litigation.................................................................4

    III.   The 2013 Resolution of the Derivative Claims...........................................7

STANDARD..................................................................................................................10

ARGUMENT .................................................................................................................10

    I.     Derivative plaintiffs owe fiduciary duties to the real party in interest.....10

CONCLUSION .............................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Arie Genger and Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Sagi Genger, et al.*,
Supreme Court, New York County, No. 651089/2010 ..........................................passim

*Birnbaum v. Birrell*,
17 F.R.D. 409 (S.D.N.Y. 1955)..................................................................................11

*Bullock v. BankChampaign, N.A.*,
569 U.S. 267 (2013)..............................................................................................10, 12

*Certain-Teed Prods. Corp. v. Topping*,
171 F.2d 241 (2d Cir. 1948) ......................................................................................11

*Dalia Genger v. TR Investors, LLC*,
Case No. 6906-CS (Del. Ch. Ct.)................................................................................8

*EBC I, Inc. v. Goldman, Sachs & Co.*,
5 N.Y.3d 11 (2005) ....................................................................................................10

*Genger v. Genger* ("*Genger 1*"),
966 N.Y.S.2d 346 (Sup. Ct. 2013).............................................................................7

*Genger v. Genger* ("*Genger 2*"),
121 A.D.3d 270 (1st Dep't 2014)........................................................................2, 3, 7

*Genger v. Genger* ("*Genger 3*"),
76 F. Supp. 3d 488 (S.D.N.Y. 2015)..................................................................1, 3, 12

*Genger v. TR Inv'rs, LLC*,
26 A.3d 180 (Del. 2011) ..........................................................................................4, 8

*Glenclova Inv. Co. v. Trans-Res., Inc.*,
874 F. Supp. 2d 292 (S.D.N.Y. 2012).........................................................................3

*In re Genger*,
2024 WL 4355593 (Bankr. S.D.N.Y. Sept. 30, 2024) .................................................11

*In re Genger*,
No. 19-13895 (JLG), 2025 Bankr. LEXIS 1478 (Bankr. S.D.N.Y. June 20, 2025).......12

*In re Larsen*,
2018 WL 4006935 (Bankr. E.D.N.Y. Aug. 16, 2018)..................................................13

*In re Snyder*,
939 F.3d 92 (2d Cir. 2019) .......................................................................................13

*Mirarchi v. Nofer (In re Nofer)*,
    514 B.R. 346 (Bankr. E.D.N.Y. 2014)...................................................................10, 12

*Mokhiber v. Cohn*,
    783 F.2d 26 (2d Cir. 1986) ....................................................................................10, 11

*Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust
    against Dalia Genger, et al.*,
    Supreme Court, New York County, No. 109749/2009 ...................................................5

*Steinberg v. Steinberg*,
    434 N.Y.S.2d 877 (Sup. Ct., N.Y. Cty. 1980)...............................................................10

*TR Inv'rs, LLC v. Genger*,
    2010 WL 2901704 (Del. Ch. July 23, 2010)...................................................................4

*TR Inv'rs, LLC v. Genger*,
    2010 WL 3279385 (Del. Ch. Aug. 9, 2010) ...................................................................4

*TR Investors, LLC v. Genger*,
    2013 WL 603164 (Del. Ch. Feb. 18, 2013)...................................................................7

**Statutes and Rules**

11 U.S.C. § 523 ...................................................................................................................10

Fed. R. Civ. P. 9(b)..............................................................................................................12

The Orly Genger 1993 Trust ("Orly Trust"), by its trustee Michael Oldner, hereby submits this opposition to Debtor Orly Genger's Motion to Dismiss Objections to Discharge and Dischargeability (the "Motion," ECF no. 17).

### PRELIMINARY STATEMENT

In a 2010 state court action, Orly Genger brought derivative claims on behalf of the Orly Trust relating to an allegedly unfair purchase price paid for shares owned by the Orly Trust. In June 2013, she settled the case, "monetiz[ing] her beneficial interest in the Orly Trust shares for $32.3 million."[1] She claimed to be settling her "individual claims," but she had no individual claims. Indeed, the "individual claims" excuse directly acknowledges that the settlement was a collusive attempt to resolve the case in a way that diverted the funds away from the real party in interest: the Orly Trust.

As detailed in the instant Adversary Proceeding, a derivative plaintiff has a fiduciary duty to the real party in interest. Orly's intentional diversion of the settlement funds constituted a defalcation while acting in a fiduciary capacity, and her liability for her actions is non-dischargeable under the Bankruptcy Code.

In moving to dismiss Adversary Proceedings filed by Sagi, Dalia, and the Orly Trust, the Debtor does not make any argument as to why this case (as opposed to the Sagi and Dalia cases) should be dismissed. The only sentence relating to the Orly Trust's Adversary Proceeding is the incorrect contention that this case is (supposedly) "premised solely" on the contention that the "Debtor was entitled to and did receive the $32 million from the 2013 settlement." (Motion at 9.)

---

[1] *Genger v. Genger*, 76 F. Supp. 3d 488, 501 (S.D.N.Y. 2015), *aff'd* 663 F. App'x 44 (2d Cir. 2016).

But that's not what the Orly Trust's Adversary Proceeding asserts. Instead, the Orly Trust's complaint alleges – correctly – that Orly's conduct, in orchestrating the diversion of the 2013 settlement, constituted a defalcation while acting in a fiduciary capacity.

This Court should deny the motion to dismiss and instead grant summary judgment in favor of Plaintiff.

## RELEVANT FACTS

### I.    The Genger Divorce and Related Litigation

In 1985, Arie Genger founded Trans-Resource, Inc. ("TRI"), a company that produces and distributes fertilizer. *Genger v. Genger*, 121 A.D.3d 270, 274 (1st Dep't 2014) ("*Genger 2*"). Until 2001, TRI was a subsidiary of TPR Investment Associates, Inc. ("TPR"). *Id.* The Genger family—Arie, father, Dalia, mother, Orly, daughter, Sagi, son—each held an interest in TPR. Sagi and Orly held indirect interests in TPR through their respective trusts, the Sagi Genger 1993 Trust ("Sagi Trust") and the Orly Trust.[2]

In 2001, a group of investors ("Trump Group") purchased a minority stake in TRI. The Stockholders Agreement ("2001 Stockholders Agreement") governing that purchase placed restrictions on future transfers of TRI stock and provided a right of first refusal to the Trump Group. A transfer that violated those conditions would be void, the shares would revert to TPR, and the Trump Group would have a right to

---

[2] Dalia, the Sagi Trust, and the Orly Trust owned a minority stake in TPR through a limited partnership.
Arie owned a majority stake in TPR directly.

purchase the invalidly transferred shares at their fair market value as of the date of the voided transfer.

In October 2004, Aria and Dalia entered into a divorce settlement. As part of that settlement, TPR transferred the family's interests in TRI to (i) Arie, (ii) the Orly Trust and (iii) the Sagi Trust ("2004 Transfers"). The trusts received equal ownership interests.

In 2008, after a dispute between the Trump Group and TRI regarding additional financing, the Trump Group sued TPR in federal court claiming that the 2004 Transfers violated the 2001 Stockholders Agreement and triggered their right of first refusal. *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 296 (S.D.N.Y. 2012).

While that litigation was pending, in 2008, TPR and the Sagi Trust reached a two-part settlement with the Trump Group. In the "Main Agreement," TPR and the Sagi Trust agreed to sell the TRI shares purportedly held by the Sagi Trust to the Trump Group for approximately $26.7 million, regardless of whether a court determined that the 2004 Transfers were void. *Genger 2*, 121 A.D.3d at 275; *see Genger v. Genger*, 76 F. Supp. 3d 488, 493 (S.D.N.Y. 2015) ("*Genger 3*"), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). In the "Side Letter Agreement," TPR agreed to give the Trump Group the option to buy whatever rights TPR held in the TRI shares purportedly held by Arie and the Orly Trust for approximately $7.4 million and $10.3 million, or 60% less than the price the Trump Group paid for the Sagi Trust's TRI stock. *Genger 2*, 121 A.D.3d at 275; *see Genger 3*, 76 F. Supp. 3d at 493. This option would be trigged only if a court determined that the 2004 Transfers were void, resulting in the legal and/or beneficial ownership of the TRI shares reverting to TPR.

Meanwhile, in 2008, after a dispute over control of TRI's board, the Trump Group filed suit against Arie in Delaware Chancery Court to determine who controlled TRI. In July 2010, the Chancery Court found that the 2004 Transfers *did* violate the 2001 Stockholders Agreement and that the Trump Group had majority control through the Main Agreement with TPR and the Sagi Trust. *TR Inv'rs, LLC v. Genger*, 2010 WL 2901704 (Del. Ch. July 23, 2010), *aff'd*, 26 A.3d 180 (Del. 2011). Then, in August 2010, the court also determined that the 2004 Transfers to Arie and the Orly Trust were invalid and that the stock had reverted to TPR, triggering the Trump Group's option to buy the stock under the Side Letter Agreement. *TR Inv'rs, LLC v. Genger*, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010), *rev'd in part*, 26 A.3d 180 (Del. 2011).

In 2011, the Delaware Supreme Court affirmed that the 2004 Transfers were invalid, which meant that TPR held *record* ownership of the shares purportedly transferred to Arie and the trusts as a result of the 2004 Transfers.[3] The court also found that Arie was personally bound by the Chancery Court's ruling that the transfer out of TPR was legally void, as Arie was before the court, but that it lacked the power to declare who owned the *beneficial* interests in the shares transferred by TPR to the Orly Trust because it lacked personal jurisdiction over the Orly Trust and TPR. *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 202 (Del. 2011).

## II.   <u>New York State Court Litigation</u>

In 2009 and 2010, Orly and her father Arie jointly commenced two state court lawsuits: *Orly Genger in her individual capacity and on behalf of The Orly Genger 1993*

---

[3] Of course, as a result of this, the Trump Group obtained record ownership under the 2008 agreements (the Main and Side Letter Agreements) with the Sagi Trust and TPR. *See Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 200 (Del. 2011).

*Trust against Dalia Genger, et al.*, Supreme Court, New York County, No. 109749/2009 ("2009 Action"), and *Arie Genger and Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Sagi Genger, et al.*, Supreme Court, New York County, No. 651089/2010 ("2010 Action").[4]

The 2013 Settlement at issue here arose out of the 2010 Action. In that action, brought before the Delaware Supreme Court's decision in 2011, Arie and Orly (derivatively, on behalf of the Orly Trust) brought claims related to the ownership of the TRI shares and the Trump Group's allegedly unfair purchase price paid to TPR for the Orly Trust and Arie shares (i.e., the 60% discount compared to the price paid for the Sagi Trust's shares). Orly purported to bring her claims derivatively *and individually*, but because Orly never owned any shares in her individual capacity, her claims were *necessarily derivative* of the Orly Trust. In fact, at *no* point did Orly *ever* directly or indirectly own any shares of TRI *as an individual*.

Through counsel, Orly repeatedly acknowledged that she was acting in a derivative capacity on behalf of the Orly Trust. By way of examples:

First, Orly filed a brief on November 22, 2011, arguing that "as the beneficiary of the … Trust, [Orly] has a right to assert causes of action on behalf of the trust." *See* Orly Genger's Mem. of Law in Opposition to Motions to Dismiss at 1, *2010 Action* (No. 182) (citing *2009 Action*, (No. 71), slip. op. at 4 (June 28, 2010)).

---

[4] The 2009 Action is not directly relevant to this suit—the 2013 Settlement arose out of the *2010* Action—but it provides useful context, as Orly made many additional representations in the 2009 Action that she was representing the interests of the Orly Trust.

Second, at a motion hearing on March 13, 2012, Orly (through attorney Yoav Griver) argued that she had the right to pursue derivative claims on behalf of the Orly Trust:

> [T]here's no question that the Orly Trust is represented. The caption of the case says that Orly is representing both herself and the Orly Trust. The Orly Trust interests are represented here. If the Court agrees with me, it's being represented by me. If the Court agrees with [the Trustee's counsel] Mr. Meister … it's being represented by Mr. Meister and [the Trustee]. Everyone here, every trustee, every beneficiary is right before the court.

Transcript of Proceedings at 109, *2010 Action* (No. 222). Mr. Griver later reassured the court that the lawsuit was indeed for the benefit of the Orly Trust:

> As far as the fact that Orly is trying to steal from the trust, if your Honor credits that, then honestly it has not [been] paying attention to the last two years of litigation. But I will draw the Court's attention to footnote 7 of page 10 of Orly Genger's second reply memorandum … where *Orly explains that Orly seeks the reformation of the stipulation of settlement, which would result in the Orly Trust continuing to have the same beneficial interest in its TRI shares that it was intended to have as a result of Arie and Dalia's divorce.*

Transcript of Proceedings at 131, *2010 Action* (No. 222) (emphasis added).

Third, Orly stated in a brief filed on February 26, 2013: "As the caption in this case clearly states, the Orly Trust remains a party [and] this Court has already ruled that Orly has the right to prosecute actions on behalf of the Orly Trust."[5] (Orly Genger's Mem. of Law in Opposition to the Trump Group['s] Motion to Vacate or Modify Temporary Restraining Order at 4, *2010 Action* (No. 341)).

---

[5] As cited above, the 2010 Action caption was "*Arie Genger and Orly Genger in her individual capacity and **on behalf of The Orly Genger 1993 Trust** against Sagi Genger, et al.*" (emphasis added).

- 6 -

In January 2013, the state court permitted the Orly Trust's and Arie's breach of fiduciary duty and unjust enrichment claims to proceed. *Genger v. Genger*, 966 N.Y.S.2d 346 (Sup. Ct. 2013) ("*Genger 1*"). The state court rejected the Trump Group's argument that Orly did not have standing to bring derivative claims on behalf of the Orly Trust. *See id.* On appeal, the First Department did not disturb that finding. *Genger 2*, 121 A.D.3d at 281.

III.    The 2013 Resolution of the Derivative Claims

In February 2013, the Delaware Chancery Court indicated that it would hold a contempt proceeding against Arie for continuing the 2010 Action in New York, in violation of the Chancery Court's prior finding that the share transfers were void. *See TR Investors, LLC v. Genger*, 2013 WL 603164 (Del. Ch. Feb. 18, 2013). Then, in June 2013, with Arie days away from a likely contempt citation, TRI, Orly, Arie, the Brosers and their related entities, and the Trump Group entered into the secret, collusive 2013 Settlement.

This 2013 Settlement Agreement provided that the Trump Group would pay $32.3 million (comprised of $17.3 million in cash and two promissory notes of $7.5 million each) to "resolve all issues, disputes and disagreements between the [parties]," including the "issue of ownership of all [TRI] shares." The Agreement said *nothing*, however, about how the $32.3 million should be distributed.

Despite providing no clear mechanism for payment to the Orly Trust, the Agreement required the parties to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group." In other words, the signatories took the Orly Trust's money and then agreed to ensure that the Trust's claims would be

- 7 -

extinguished.[6] By doing so, the signatories made clear that the purpose of the settlement—and the only material consideration for the $32 million payment—was to release claims belonging to the *Orly Trust*.[7]

On June 18, 2013, Arie's counsel informed the court of the settlement by letter: "Enclosed please find a Stipulation of Discontinuance with Prejudice ["First Stipulation"]…. Arie Genger and Orly Genger, in her individual capacity *and on behalf of the Orly Genger 1993 Trust*; … Arnold Broser, David Broser and [their entities]; and [the Trump Group], and [TRI] have entered into a confidential settlement agreement to resolve all issues among the stipulating parties." Letter to Judge, *2010 Action* (No. 465) (emphasis added). On the enclosed stipulation of dismissal, attorney Yoav Griver signed for Orly Genger, "in her individual capacity and on behalf of the Orly Genger 1993

---

[6] In 2011, the Trustee of the Orly Trust had brought an action in Delaware seeking to validate the Orly Trust's ownership of the TRI shares—a suit Orly then successfully had enjoined as "duplicative" of her earlier-filed derivative claims in the 2010 Action. *See Dalia Genger v. TR Investors, LLC*, Case No. 6906-CS (Del. Ch. Ct.). After the 2013 Settlement Agreement was executed, Orly (through counsel) lobbied the Delaware court and the Orly Trust's Trustee to discontinue the declaratory judgment claim against the Trump Group, on the ground that the ownership issue had been conclusively resolved in New York by virtue of the 2013 Settlement Agreement. *See* Letter from William Wachtel to Chancellor Strone, Aug. 12, 2013 ("We wish to confirm … that Orly has indeed settled all disputes between her and the Trump Group. As part of that settlement, Orly has acknowledged individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust.") (available at S.D.N.Y. No. 13-cv-08243-JF (No. 21-10)). In reliance thereon, the Orly Trust's Trustee ultimately agreed to do so, dismissing the case by stipulation, but specifically carved out the right to maintain "claim[s] for monetary damages." *See Dalia Genger v. TR Investors, LLC*, Case No. 6906-CS (Del. Ch. Ct.), No. 38 (available at 2013 Del. Ch. LEXIS 355).

[7] Although some of the settlement value is *conceivably* attributable to Arie's purported TRI shares, the Delaware Supreme Court affirmed that Arie had no ownership interest in the TRI shares, and thus the value of his ownership claim was, at most, de minimis. *See Genger*, 26 A.3d 180.

Trust." Letter to Judge, *2010 Action* (No. 465); *see also* Stipulation (Request to so Order), *2010 Action* (No. 466) (including "on behalf of" Orly Trust language).

TPR and the Sagi Trust (in its capacity as a remainderman beneficiary of the Orly Trust) responded to the First Stipulation with a proposal to carve out and preserve any derivative claims from the dismissal. But on June 28, 2013, the Trump Group (represented by Skadden Arps) submitted a joint letter to the state court collectively rejecting that proposal:

> I write on behalf of the parties to the [2013 Settlement], including Arie and Orly Genger and my clients, the Trump Group. A material term of the agreement among the settling parties was the dismissal of **all** claims presently pending against one another, in whatever capacity they were brought. Certain of Orly Genger's claims against the Trump Group in this action have been held by Justice Feinman to be derivative in nature, brought by Orly on behalf of the Orly Genger 1993 Trust.
>
> …
>
> The language that was drafted during yesterday's conference call as a potential "fix" for the issues raised by [counsel for the Sagi Trust] – that "nothing contained [in the Order] shall in any way affect any derivative claims presently before the Court" - - would have the effect of **not** dismissing Orly Genger's derivative claims against the Trump Group, contrary to the agreement of the settling parties. <u>Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement</u>, and as a consequence we cannot stipulate to the entry of an order that includes such carve-out language.

Letter to Judge, *2010 Action* (No. 485) (bold in original, underline added).

On June 26, 2013, a Second Amended Stipulation of Discontinuance with Prejudice ("Second Stipulation") was filed. This stipulation was amended to replace the phrase "on behalf of the [Orly Trust]" with the (notably ambiguous) phrase "as beneficiary of [the Orly Trust]" (sometimes by physically crossing out "on behalf of" and hand-writing "as beneficiary of," including in the signature line). *2010 Action* (No. 471).

- 9 -

On July 1, 2013, the Second Stipulation was so-ordered by the court with all instances of "on behalf of" physically crossed out and replaced with handwritten text stating "as beneficiary of." *2010 Action* (No. 487). The Second Stipulation made no mention of the disposition of the settlement proceeds or even that consideration was given.

## STANDARD

On a motion to dismiss, the Court must accept all factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. To adequately plead a claim of non-dischargeability for defalcation under § 523(a)(4), the plaintiff need only allege plausible facts showing "(i) the existence of a fiduciary relationship between the debtor and the objecting creditor, and (ii) a defalcation committed by the debtor in the course of that relationship." *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (quotation omitted). "[W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273 (2013). The "intentional wrong" requires a mental state "involving knowledge of, or gross negligence in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 269.

## ARGUMENT

I.    **Derivative plaintiffs owe fiduciary duties to the real party in interest.**

Derivative plaintiffs owe fiduciary duties to the principals for whom they bring suit. *Mokhiber v. Cohn*, 783 F.2d 26, 29 (2d Cir. 1986); *see Steinberg v. Steinberg*, 434 N.Y.S.2d 877, 878 (Sup. Ct., N.Y. Cty. 1980) (noting that a derivative plaintiff "makes herself a fiduciary"); *see also EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 31 (2005) ("A fiduciary relationship 'exists between two persons when one of them is under

- 10 -

a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'").

As detailed above, Orly was unquestionably prosecuting the State Court action as a derivative plaintiff, on behalf of the Orly Trust. Accordingly, she owed fiduciary duties to the Orly Trust, as the real party in interest.

Further, as alleged in the Adversary Complaint, Orly violated those duties by entering into a collusive settlement of the derivative claims. A derivative plaintiff clearly cannot purport to settle "individual claims." *See In re Genger*, 2024 WL 4355593, at *10 (Bankr. S.D.N.Y. Sept. 30, 2024) (quoting *Clarke v. Greenberg*, 71 N.E.2d 443, 445 (1947)) ("It has long been the case that when 'success crowns his effort,' a derivative plaintiff is not entitled to retain the direct benefits of his derivative action because the derivative plaintiff sues only nominally in his own name, but actually on behalf of the entity who has been injured."); *Mokhiber*, 783 F.2d at 29 ("Those 'fruits' -- the moneys paid to counsel -- must be accounted for irrespective of whether they went to the derivative plaintiffs or to their lawyers."); *Certain-Teed Prods. Corp. v. Topping*, 171 F.2d 241, 243 (2d Cir. 1948) ("Defendant cannot evade his fiduciary responsibility to account to the corporation for all recovery resulting from his derivative action by the mere device of authorizing or permitting payment to his attorneys instead of himself."); *Birnbaum v. Birrell*, 17 F.R.D. 409, 411 (S.D.N.Y. 1955) ("the unsavory practice of private and collusive settlement").

In response, Orly may argue that she only settled her individual claims. But that excuse directly acknowledges that the settlement was collusive. Orly didn't have any individual claims. However the signatories to the 2013 Settlement Agreement chose to

- 11 -

dispose of the settlement proceeds, one fact is clear: the settlement proceeds represent the monetization of the claims brought derivatively by Orly on behalf of the Orly Trust: "Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million." *Genger v. Genger*, 76 F. Supp. 3d 488, 501 (S.D.N.Y. 2015), *aff'd* 663 F. App'x 44 (2d Cir. 2016).. Indeed, "[t]here is no dispute that Orly never directly owned shares of TRI." *In re Genger*, No. 19-13895 (JLG), 2025 Bankr. LEXIS 1478, at *7 (Bankr. S.D.N.Y. June 20, 2025).

Finally, the complaint – at the pleading stage – adequately alleges scienter. Intent "may be averred generally." Fed. R. Civ. P. 9(b). Here, Orly's conduct in holding herself out as acting on behalf of the Orly Trust, only to divert the $32 million in settlement proceeds, is plainly bad faith and, therefore, a defalcation. Such a finding is discernible from the circumstances of the case. *See Mirarchi*, 514 B.R. at 355 ("Determinations as to whether the activities of [fiduciaries] were undertaken in good faith … depend not only on an analysis of the objective facts but as well in part on an appraisal of [fiduciaries'] motives") (quoting *Schwartz v. Marien,* 37 N.Y.2d 487, 493 (1975)).

Orly's conduct also constitutes a defalcation because it demonstrates, at minimum, a willful blindness to the substantial and justifiable risk that her actions would violate her fiduciary duty. *Bullock*, 596 U.S. at 274. Considering the claims in the derivative litigation, the repeated assertions that Orly was acting on behalf of the Orly Trust, circumstances of the 2013 settlement, and the ultimate diversion of funds, Orly's conduct clearly involves the necessary gross deviation from the standard of conduct expected from a law-abiding person in a similar situation. *Id.*; *In re Larsen*, 2018 WL

- 12 -

4006935, at *5. (Bankr. E.D.N.Y. Aug. 16, 2018) (when "determining whether the Debtor had the requisite state of mind to meet the defalcation standard[,] the Court looks at" all evidence presented and witness credibility) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)). In other words, a consideration of the circumstances surrounding the conduct at issue is sufficient to support a finding of defalcation. *See In re Snyder*, 939 F.3d 92, 104 (2d Cir. 2019) (defalcation where money was transferred to a bank account for the purpose of buying property and was, instead, used for personal expenses, among other things). Malice, as well, can be implied by the acts and conduct of the debtor and the surrounding circumstances. *Id.* (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2d Cir. 2006)).

Accordingly, the Adversary Complaint adequately alleges (i) the existence of a fiduciary relationship; and (ii) a defalcation by the Debtor.

## CONCLUSION

For the foregoing reasons, we respectfully submit that the Court should deny the Motion to Dismiss the Orly Trust's Adversary Complaint.[8]

Dated: June 25, 2025

**POLLOCK COHEN LLP**

By: */s/ Adam Pollock*
    Adam Pollock
111 Broadway, Suite 1804
New York, NY 10006
Adam@PollockCohen.com
(212) 337-5361
*Attorneys for the Orly Genger 1993 Trust,*
*by its Trustee Michael Oldner*

---

[8] Were the Court to grant the Debtor's motion to dismiss, Plaintiff respectfully requests leave to amend.